Vicki G. NEWBERG, Acting Director of the Special Fund, Appellant,

v.

Edwin PRICE; Shamrock Coal Company; Lloyd R. Edens, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 93–SC–116–WC.

Supreme Court of Kentucky.

Sept. 30, 1993.

Rehearing Denied Dec. 22, 1993.

Joel D. Zakem, Labor Cabinet—Special Fund, Louisville, for appellant.

Dennis L. Nagle, Cole, Cole, Anderson & Nagle, PSC, Barbourville, for appellee Price.

Neville Smith and Timothy L. Wells, Manchester, for appellee Shamrock Coal Co.

## OPINION OF THE COURT

Claimant sought benefits for coal workers' pneumoconiosis pursuant to KRS 342.732.

The relevant medical evidence was as follows:

| PHYSICIAN | X-RAYS | HEIGHT | FVC | FEV1 |
|---|---|---|---|---|
| Anderson | 1/1 | 69 ¼" | 65.9% | 53.5% |
| Baker | 1/2 | 67 " | 81.0% | 77.0% |
| Bassali | 0/0 | (no pulmonary tests) | | |
| Broudy | 0/1 | 68 " | 86.0% | 84.0% |
| Spitz | 0/0 | (no pulmonary tests) | | |
| Wright | 0/0 | 70 " | 90.0% | 74.0% |

The Administrative Law Judge (ALJ) determined that claimant had contracted category 1 pneumoconiosis and chose to accept Dr. Anderson's evidence of pulmonary function. Based on Dr. Anderson's reported FEV1 value, which equalled 53.5% of the predicted normal value, the ALJ awarded benefits for permanent, total, occupational disability pursuant to KRS 342.732(1)(c).

The employer and the Special Fund filed petitions for reconsideration, asserting that because Dr. Broudy had found both FVC and FEV1 values in excess of 80% of the predicted normal values claimant was eligible only for a retraining incentive benefit. KRS 342.-732(1)(a). The petitions were sustained by the ALJ to the extent that he made additional findings regarding the range of three inches in the height measurements reported by the various physicians. He also noted that Dr. Broudy reported a different height for the pulmonary function studies than he

had reported for the electrocardiogram. The ALJ then determined that claimant was 70 inches tall and recalculated the percent of normal represented by each of the reported spirometric values. He also determined that all of the recalculated FEV1 values were less than 80% of the predicted normal.

The Workers' Compensation Board (Board) reversed and remanded, ruling that the ALJ had arbitrarily chosen the 70 inch height measurement of Dr. Wright, the measurement most favorable to the claimant, and substituted it for the height reported by each of the testifying physicians. Furthermore, the ALJ was not authorized to pick and choose among the pulmonary function studies but was required by KRS 342.732(2) to rely on the largest FEV1 or the largest FVC value from the totality of the spirometric testing. Accordingly, the Board concluded that claimant was entitled only to a retraining incentive benefit, pursuant to KRS 342.-732(1)(a), as a matter of law.

The Court of Appeals affirmed regarding the ALJ's lack of discretion to pick and choose among the reported pulmonary function studies. *Wright v. Hopwood Mining,* Ky., 832 S.W.2d 884 (1992). However, the court reversed, citing *Newberg v. Wright,* Ky., 824 S.W.2d 843 (1992), and upheld the ALJ's substitution of the height reported by Dr. Anderson for that reported by the testifying physicians and his subsequent recalculation of the percent of normal represented by the spirometric values they reported.

The sole issue before us is whether the ALJ may pick and choose among the height measurements reported by the various physicians and then recalculate the percent of normal represented by their reported spirometric values, substituting the chosen height for that reported by each physician. We disagree with the view taken by the Court of Appeals, and, hence, we reverse.

Contrary to the court's opinion, we believe that the factual situation in this case is not analogous to that in *Newberg v. Wright, supra.* In that case, one physician failed to list the worker's height in his medical report, although a height of 70½ inches did appear on his spirometric tracing sheet, as required by KRS 342.316(2)(b)2.b. At the hearing, counsel for the worker argued that the percent of normal for the FEV1 value reported by that physician was patently erroneous in view of the worker's actual spirometric value, age, and probable height. The ALJ, therefore, recalculated the percent of normal represented by that physician's FEV1 value using the height of record that was not only less favorable than the 70½ inch figure that appeared on the physician's spirometric tracing sheet, but was the height of record least favorable to the claim. Even using the height of record that was least favorable to the claim, Wright's recalculated FEV1 value was less than 80% of the predicted normal value, and he qualified for benefits pursuant to KRS 342.732(1)(b). Obviously, had the more favorable 70½ inch figure from the spirometric tracing sheet been used, claimant would also have qualified for the benefit.

In *Beale v. Highwire,* Ky.App., 843 S.W.2d 898 (1992), where the reporting physicians used inappropriate norms for age and height, the court held that the ALJ was within his authority to recalculate the percent of normal using each physician's reported spirometric values and the correct norms. In that case the worker's height was stipulated by the parties and was not at issue.

In the instant case, Dr. Broudy reported a height of 68 inches for the purposes of the pulmonary function studies, not 67 inches as was found by the ALJ, and a height of 69 inches was indicated on the electrocardiogram report that was attached to his deposition. There was no indication of which height was more accurate, and both heights were close to the mean of those reported by all of the physicians. Nonetheless, noting this discrepancy and the range of 3 inches in the heights reported by the various physicians, the ALJ arbitrarily chose the height of record most favorable to the worker, which was more favorable than either of the heights in Dr. Broudy's report, to recalculate the relevant percentages. The ALJ's finding that "all physician's (sic) reports, when cor-

rectly calculated, would result in an FEV1 of less than 80%," indicates that the ALJ believed he was authorized to undertake a similar substitution of height and recalculation of the percentages reported by the other physicians as well.

 Nothing in *Newberg v. Wright, supra,* or in *Beale v. Highwire, supra,* authorizes the ALJ to substitute one physician's height measurement for that reported by another unless it is pursuant to a stipulation of the parties or unless the unusual circumstances of *Newberg v. Wright, supra,* recur. See *Varney v. Newberg,* Ky., 860 S.W.2d 752 (rendered May 27, 1993, ordered published September 2, 1993). We believe that in the instant case the ALJ's action was both arbitrary and unauthorized. There was no evidence whatever that the height measurement chosen by the ALJ was any more accurate than the others, and there was no stipulation as to height. Unlike *Newberg v. Wright, supra,* this was not a case in which, even when using the most unfavorable height measurement, the claimant qualified for the greater benefit. Under the circumstances present herein and regardless of differences in the worker's reported height, the ALJ must rely on the height measurement and the percentages of normal represented by the worker's spirometric values as reported by each of the physicians. The evidence, as reported, supported the award of a retraining incentive benefit only. KRS 342.-732(1)(a).

Considering the number of cases in which a substantial range of heights are reported by the various physicians, the accurate measurement of a worker's height must be a considerably more difficult task than it would appear to the lay person. The percentage of the predicted normal values represented by a worker's spirometric values is a function of the worker's age and height. The tables containing predicted normal values that are used to compute the percent of normal represented by a worker's spirometric values are based on height as measured in centimeters. Because the accurate measurement of the worker's height is critical to the claim, we also remind litigants that the American Medical Association's *Guides to the Evaluation of Permanent Impairment (Guides)* indicate that the worker's height should be measured in centimeters, not in inches as is commonly done and as was done in the instant case. Because there are approximately 2.54 centimeters per inch, the use of a measuring device calibrated in centimeters should enhance the accuracy of measurement. Furthermore, measurement of the worker's height in centimeters would prevent computational errors which arise in converting inches to centimeters in order to use the tables containing predicted normal values. We also note that the *Guides* indicate that the worker's height should be measured with the worker standing in stocking feet.

The decision of the Court of Appeals is hereby reversed, and the case is remanded to the ALJ for the entry of an order consistent with this opinion.

All concur.